**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRANDON MCKENNA, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>DICK'S SPORTING GOODS, INC., EDWARD W. STACK and LEE J. BELITSKY,<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Brandon McKenna ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Dick's Sporting Goods, Inc. ("Dick's" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Dick's securities between March 7, 2017 and May 15, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Dick's Sporting Goods, Inc. is a sporting goods retailer that offers a broad selection of brand name sporting goods equipment, apparel, and footwear. The Company owns and operates Golf Galaxy, Inc., Field & Stream and other specialty chain stores.

3. Founded in 1948, the Company was formerly known as "Dick's Clothing and Sporting Goods, Inc." and changed its name to Dick's Sporting Goods, Inc. in April 1999. Dick's is headquartered in Coraopolis, Pennsylvania and the Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "DKS."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Dick's had overstated its adjusted EBITDA amounts; (ii) accordingly, the Company lacked effective internal controls; and (iii) as a result of the foregoing, Dick's public statements were materially false and misleading at all relevant times.

5. On May 12, 2017, Dick's issued a Current Report filed on Form 8-K/A with the SEC, reporting that a "computation error resulted in *a $23.4 million overstatement of Adjusted EBITDA* amounts for both the 13 weeks and 52 weeks ended January 28, 2017" (emphasis added). In the Current Report, the Company stated, in relevant part:

Adjusted EBITDA should not be considered as an alternative to net income or any other generally accepted accounting principles measure of performance or liquidity. Adjusted EBITDA, as the Company has calculated it, may not be comparable to similarly titled measures reported by other companies. Adjusted EBITDA is a key metric used by the Company that provides a measurement of profitability that eliminates the effect of changes resulting from financing decisions, tax regulations, capital investments and certain non-recurring, infrequent or unusual items.

|  | 13 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 90,188 | $ 128,993 |
| Provision for income taxes | 52,832 | 76,223 |
| Interest expense | 1,843 | 1,462 |
| Depreciation and amortization | 84,703 | 56,911 |
| EBITDA | $ 229,566 | $ 263,589 |
| Add: Inventory write-down | 46,379 | — |
| Add: Store closing charge | 9,434 | — |
| Add: TSA and Golfsmith integration costs | 6,011 | — |
| Adjusted EBITDA, as defined | $ 291,390 | $ 263,589 |
| % increase in adjusted EBITDA | 11% | |

|  | 52 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 287,396 | $ 330,391 |
| Provision for income taxes | 171,026 | 200,484 |
| Interest expense | 5,856 | 4,012 |
| Depreciation and amortization | 233,834 | 193,594 |
| EBITDA | $ 698,112 | $ 728,481 |
| Add: Inventory write-down | 46,379 | — |
| Add: Store closing charge | 9,434 | — |
| Add: TSA and Golfsmith integration costs | 13,647 | — |
| Add: Litigation settlement charge | — | 7,884 |
| Adjusted EBITDA, as defined | $ 767,572 | $ 736,365 |
| % increase in adjusted EBITDA | 4% | |

6. On this news, Dick's share price fell $2.62 or 5.22%, over the following two trading days, to close at $47.57 on May 15, 2017.

7. On May 16, 2017, Dick's announced that sales at its existing stores in the first quarter of 2016 had fallen short of forecasts and advised investors that the Company planned to scale back new store openings in 2018 and 2019.

8. On this news, Dick's share price fell as much as $6.82, or 14.34%, during intraday trading on May 16, 2017.

3

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Dick's common stock trades on the NYSE, located within this judicial district.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Dick's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Dick's is incorporated in Delaware. The Company's principal executive offices located at 345 Court Street, Coraopolis, Pennsylvania 15108. Dick's shares trade on the NYSE under the ticker symbol "DKS."

16.     Defendant Edward W. Stack ("Stack") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

17.     Defendant Lee J. Belitsky ("Belitsky") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Executive Vice President.

18.     The defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Dick's Sporting Goods, Inc. is a sporting goods retailer that offers a broad selection of brand name sporting goods equipment, apparel, and footwear. The Company owns and operates Golf Galaxy, Inc., Field & Stream and other specialty chain stores.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on March 7, 2017, when Dick's issued a press release and filed a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended January 28, 2017 (the "Q4 2016 8-K"). For the quarter, the Company reported net income of $90.19 million, or $0.81 per diluted share, on revenue of $2.48 billion, compared to net income of $128.99 million, or $1.13 per diluted share, on revenue of $2.24 billion for the same period in the prior year.

21.     In the Q4 2016 8-K, the Company stated, in relevant part:

**Adjusted EBITDA**

Adjusted EBITDA should not be considered as an alternative to net income or any other generally accepted accounting principles measure of performance or liquidity. Adjusted EBITDA, as the Company has calculated it, may not be comparable to similarly titled measures reported by other companies. Adjusted EBITDA is a key metric used by the Company that provides a measurement of profitability that eliminates the effect of changes resulting from financing

5

decisions, tax regulations, capital investments and certain non-recurring, infrequent or unusual items

|  | 13 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 90,188 | $ 128,993 |
| Provision for income taxes | 52,832 | 76,223 |
| Interest expense | 1,843 | 1,462 |
| Depreciation and amortization | 84,703 | 56,911 |
| EBITDA | $ 229,566 | $ 263,589 |
| Add: Inventory write-down | 46,379 | — |
| Add: Non-cash impairment and store closing charge | 32,821 | — |
| Add: TSA and Golfsmith integration costs | 6,011 | — |
| Adjusted EBITDA, as defined | $ 314,777 | $ 263,589 |
| % increase in adjusted EBITDA | 19% | |

|  | 52 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 287,396 | $ 330,391 |
| Provision for income taxes | 171,026 | 200,484 |
| Interest expense | 5,856 | 4,012 |
| Depreciation and amortization | 233,834 | 193,594 |
| EBITDA | $ 698,112 | $ 728,481 |
| Add: Inventory write-down | 46,379 | — |
| Add: Non-cash impairment and store closing charge | 32,821 | — |
| Add: TSA and Golfsmith integration costs | 13,647 | — |
| Add: Litigation settlement charge | — | 7,884 |
| Adjusted EBITDA, as defined | $ 790,959 | $ 736,365 |
| % increase in adjusted EBITDA | 7% | |

22.     On March 24, 2017, Dick's filed a quarterly report on Form 10-K with the SEC (the "2016 10-K") reiterating the financial and operating results previously announced in the Q4 2016 8-K.

23.     In the 2016 10-K, the Company stated, in relevant part:

Our management conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework and criteria established in *Internal Control—Integrated Framework (2013)*, issued by the Committee of Sponsoring Organizations of the Treadway Commission. This evaluation included review of the documentation of controls, evaluation of the design effectiveness of

6

controls, testing of the operating effectiveness of controls and a conclusion on this evaluation. Based on this evaluation, management concluded that the Company's internal control over financial reporting was effective as of January 28, 2017.

24. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25. The statements referenced in ¶¶ 20-24 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Dick's had overstated its adjusted EBITDA amounts; (ii) accordingly, the Company lacked effective internal controls; and (iii) as a result of the foregoing, Dick's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

26. On May 12, 2017, Dick's issued a Current Report filed on Form 8-K/A with the SEC, reporting that a "computation error resulted in a *$23.4 million overstatement of Adjusted EBITDA* amounts for both the 13 weeks and 52 weeks ended January 28, 2017" (emphasis added). In the Current Report, the Company stated, in relevant part:

**Adjusted EBITDA**

Adjusted EBITDA should not be considered as an alternative to net income or any other generally accepted accounting principles measure of performance or liquidity. Adjusted EBITDA, as the Company has calculated it, may not be comparable to similarly titled measures reported by other companies. Adjusted EBITDA is a key metric used by the Company that provides a measurement of profitability that eliminates the effect of changes resulting from financing decisions, tax regulations, capital investments and certain non-recurring, infrequent or unusual items.

7

|  | 13 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 90,188 | $ 128,993 |
| Provision for income taxes | 52,832 | 76,223 |
| Interest expense | 1,843 | 1,462 |
| Depreciation and amortization | 84,703 | 56,911 |
| EBITDA | $ 229,566 | $ 263,589 |
| Add: Inventory write-down | 46,379 | — |
| Add: Store closing charge | 9,434 | — |
| Add: TSA and Golfsmith integration costs | 6,011 | — |
| Adjusted EBITDA, as defined | $ 291,390 | $ 263,589 |
| % increase in adjusted EBITDA | 11% | |

|  | 52 Weeks Ended | |
|---|---|---|
|  | January 28, 2017 | January 30, 2016 |
|  | (dollars in thousands) | |
| Net income | $ 287,396 | $ 330,391 |
| Provision for income taxes | 171,026 | 200,484 |
| Interest expense | 5,856 | 4,012 |
| Depreciation and amortization | 233,834 | 193,594 |
| EBITDA | $ 698,112 | $ 728,481 |
| Add: Inventory write-down | 46,379 | — |
| Add: Store closing charge | 9,434 | — |
| Add: TSA and Golfsmith integration costs | 13,647 | — |
| Add: Litigation settlement charge | — | 7,884 |
| Adjusted EBITDA, as defined | $ 767,572 | $ 736,365 |
| % increase in adjusted EBITDA | 4% | |

27. On this news, Dick's share price fell $2.62, or 5.22%, over two trading days, to close at $47.57 on May 15, 2017.

28. On May 16, 2017, Dick's announced that sales at its existing stores in the first quarter of 2016 had fallen short of forecasts and advised investors that the Company planned to scale back new store openings in 2018 and 2019.

29. On this news, Dick's share price fell as much as $6.82, or 14.34%, during intraday trading on May 16, 2017.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

8

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Dick's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Dick's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Dick's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Dick's;

- whether the Individual Defendants caused Dick's to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Dick's securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Dick's securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Dick's securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Dick's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Dick's securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

43. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Dick's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Dick's finances and business prospects.

44. By virtue of their positions at Dick's, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Dick's, the Individual Defendants had knowledge of the details of Dick's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Dick's. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Dick's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Dick's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Dick's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Dick's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

47. During the Class Period, Dick's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Dick's securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Dick's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Dick's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     During the Class Period, the Individual Defendants participated in the operation and management of Dick's, and conducted and participated, directly and indirectly, in the

conduct of Dick's business affairs. Because of their senior positions, they knew the adverse non-public information about Dick's misstatement of income and expenses and false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Dick's financial condition and results of operations, and to correct promptly any public statements issued by Dick's which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Dick's disseminated in the marketplace during the Class Period concerning Dick's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Dick's to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Dick's within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Dick's securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Dick's. By reason of their senior management positions and/or being directors of Dick's, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Dick's to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Dick's and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Dick's.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 16, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*