UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                  :

BRANDON MCKENNA, Individually and On :
Behalf of All Others Similarly Situated,      :
                                                  :
                              Plaintiff,    :        17-CV-3680 (VSB)
                                                  :
               - against -             :        **OPINION & ORDER**
                                                  :

DICK'S SPORTING GOODS, INC.,        :
EDWARD W. STACK, and LEE J.          :
BELITSKY,                                                 :
                                                  :
                              Defendants.  :
                                                  :
------------------------------------------------------------X

Appearances:

Joseph Alexander Hood, II
Michael Grunfeld
Jeremy Alan Lieberman
Pomerantz LLP
New York, New York
*Counsel for Plaintiff and Movant Ironworkers Locals 40, 361 & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds*

Adam M. Apton
Levi & Korsinsky LLP
Washington, D.C.
*Counsel for Movant Brenda Powell*

Lesley Frank Portnoy
Glancy Prongay & Murray LLP
New York, New York
*Counsel for Movant Elliot Stamler*

David Avi Rosenfeld
Robbins Geller Rudman & Dowd LLP
Melville, New York
*Counsel for Movant Oklahoma Police Pension & Retirement System*

VERNON S. BRODERICK, United States District Judge:

The instant action is brought by Plaintiff Brandon McKenna against Dick's Sporting Goods, Inc. ("Dick's"), Edward W. Stack ("Stack"), and Lee J. Belitsky ("Belitsky," and collectively, "Defendants") on behalf of all persons who purchased or otherwise acquired Dick's securities between March 7, 2017 and May 15, 2017 ("Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission ("SEC") pursuant to the Exchange Act. (*See* Compl. ¶ 1.)[1]

Before me are four motions to appoint Lead Plaintiff and Lead Counsel pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u–4(a)(3)(B), as amended by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(a)(3). The motions have been filed by four movants: (1) Brenda Powell ("Powell"), (2) Elliot Stamler ("Stamler"), (3) Oklahoma Police Pension & Retirement System ("Pension & Retirement System"), and (4) Ironworkers Locals 40, 361 & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds ("Ironworkers," and collectively, "Movants"). (Docs. 10, 13, 16, 19.) Because Ironworkers's motion is unopposed, and Ironworkers meets all requirements set out by the PSLRA, Ironworkers's motion requesting appointment as Lead Plaintiff and approval of Pomerantz LLP ("Pomerantz") as Lead Counsel, (Doc. 19), is GRANTED. The remaining three motions requesting appointment of Lead Plaintiff and approval of Lead Counsel, filed by Powell, Stamler, and Pension & Retirement System, (Docs. 10, 13, 16), are DENIED.

---

[1] "Compl." refers to Plaintiff's Complaint, filed May 16, 2017. (Doc. 1.)

I.   **Background and Procedural History**[2]

Dick's is a sporting goods retailer offering a wide range of brand-name sporting goods and equipment. (Compl. ¶ 2.) It was founded in 1948 under the name Dick's Clothing and Sporting Goods, Inc., and in April 1999, changed its name to Dick's Sporting Goods, Inc. (*Id.* ¶ 3.) Dick's is headquartered in Coraopolis, Pennsylvania, and its stock trades on the New York Stock Exchange under the ticker symbol DKS. (*Id.*)

On May 16, 2017, Plaintiff commenced the instant action by filing a complaint against Dick's alleging that throughout the Class Period Defendants made materially false and misleading statements regarding Dick's business and operations ("Complaint"). (*Id.* ¶ 4.) In particular, Plaintiff alleges that Defendants "made false and/or misleading statements and/or failed to disclose that: (i) Dick's had overstated its adjusted EBITDA amounts; (ii) accordingly, the Company lacked effective internal controls; and (iii) as a result of the foregoing, Dick's public statements were materially false and misleading at all relevant times." (*Id.*) Plaintiff alleges that as a result of these material misstatements, which were revealed by a Form 8-K/A report filed with the SEC on May 12, 2017, Dick's share price fell as much as $6.82, resulting in significant losses and damages for Plaintiff and other class members. (*See id.* ¶¶ 5–9.)

On the same day that Plaintiff filed his Complaint, counsel for Plaintiff published notices announcing the initiation of this securities class action ("Notices"). (Apton Decl. Ex. 3; Portnoy Decl. Ex. A; Lieberman Decl. Ex. A; Rosenfeld Decl. Ex. A.)[3] The Notices informed

---

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

[3] The Notices appear to have been published in two separate publications—Globe Newswire, (*see* Apton Decl. Ex. 3; Portnoy Decl. Ex. A; Lieberman Decl. Ex. A), and Market News Publishing, (*see* Rosenfeld Decl. Ex. A). "Apton Decl." refers to the Declaration of Adam M. Apton in Support of Brenda Powell's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed July 17, 2017. (Doc. 12.) "Portnoy Decl." refers to the Declaration of Lesley F. Portnoy in Support of Elliot Stamler's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed July 17, 2017. (Doc. 15.) "Rosenfeld Decl." refers to the Declaration of David A. Rosenfeld in Support of Oklahoma Police Pension & Retirement System's Motion for Appointment as

3

shareholders that if they had purchased Dick's securities during the Class Period, they would have until July 17, 2017 to "ask the Court to appoint [them] as Lead Plaintiff for the class." (*See* Portnoy Decl. Ex A, at 1.)

After the Notices were published, on June 12, 2017, counsel for Plaintiff, with consent from Defendants, requested an extension of time for Defendants to respond to the Complaint until after Lead Plaintiff and Lead Counsel were appointed, and set out a proposed briefing schedule for the filing of the amended complaint, Defendants' answer, and Plaintiff's reply after Lead Plaintiff and Lead Counsel were selected. (Doc. 8.) On June 13, 2017, I issued an Order granting the extension of time and adopting the proposed schedule ("June 13 Order"). (Doc. 9.) On July 17, 2017, the date specified on the Notices, Movants filed their motions requesting appointment of Lead Plaintiff and Lead Counsel, (Docs. 10, 13, 16, 19), with supporting declarations and memoranda, (Docs. 11–12, 14–15, 17–18, 20–21).

On July 21, 2017, Powell withdrew her motion because "[b]ased upon a review of the competing motions and supporting papers provided by the other movants . . . it appear[ed] that, while [she was] well-qualified to serve as Lead Plaintiff in the action, [she did] not possess the 'largest financial interest in the relief sought by the class.'" (Doc. 22, at 2 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)).) On July 31, 2017, Stamler filed a notice of non-opposition to competing motions for appointment, stating that "[h]aving reviewed the competing motions and supporting papers, it appears that [Ironworkers] possess[es] the 'largest financial interest in the relief sought by the class'" and "appear[s] to preliminarily satisfy the . . . requirements of Rule 23 of the Federal Rules of Civil Procedure." (Doc. 24.) Similarly, on the same day, Pension &

---

Lead Plaintiff and Approval of Selection of Lead Counsel, filed July 17, 2017. (Doc. 18.) "Lieberman Decl." refers to the Declaration of Jeremy A. Lieberman in Support of Ironworkers Locals 40, 361 & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, filed July 17, 2017. (Doc. 21.)

4

Retirement System filed a response stating that it "recognize[d] that it did not suffer the greatest loss." (Doc. 23.) On August 1, 2017, Ironworkers filed a notice that its motion was unopposed. (Doc. 25.)

## II. Discussion

### A. *Appointment of Lead Plaintiff*

The procedures set forth in the PSLRA, 15 U.S.C. § 78u–4, govern the appointment of lead plaintiff in securities class actions. The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (quoting *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001)); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998); H.R. Conf. Rep. No. 104–369. Before its enactment, "professional" plaintiffs overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02 Civ.1989(DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)).

Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). There is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest

5

financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u–4(a)(3)(B)(iii)(I). Other class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

Here, because Ironworkers filed a timely motion, has the largest financial interest, and otherwise meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, as further detailed below, I appoint it Lead Plaintiff.

### 1. Timeliness

#### a. Applicable Law

As an initial matter, the PSLRA requires that the named plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. 15 U.S.C. § 78u–4(a)(3)(A)(i). The notice must inform the purported plaintiff class of the pendency of the action, the claims asserted in the complaint, the purported class period, and the ability to move, within sixty days of the notice, to serve as lead plaintiff of the purported class. *Id.* Courts strictly adhere to the sixty-day rule, and any motion filed after the sixty-day period will not be considered except under rare circumstances. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (calling the 60-day deadline a "strict deadline"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) ("Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published.").

6

b. Application

Plaintiff's counsel published the Notices on May 16, 2017, the same day that Plaintiff filed his Complaint in this Court (*see* Doc. 1)—satisfying the twenty-day requirement set forth in 15 U.S.C. § 78u–4(a)(3)(A)(i). Further, Movants filed their respective motions on July 17, 2017, (*see* Docs. 10, 13, 16, 19), satisfying the requirement that such motions be filed within sixty days of publication of notice of pendency of the action, 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). Thus, Movants timely filed their motions under the PSLRA.

### 2. Largest Financial Interest

a. Applicable Law

The PSLRA does not specify a method by which to determine which plaintiff has the largest financial interest. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). In fact, neither the Supreme Court nor the Second Circuit has explicitly provided a test. *Id.* Thus, courts in this District use the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), when making a determination as to what party has the largest financial interest. Those factors include: (1) total number of shares purchased during the class period; (2) net shares purchased during the class period; (3) net funds expended during the class period; and (4) approximate financial losses suffered. *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 395 (applying the *Lax* test); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008) (same); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same).

Financial loss is the factor typically given the most weight; therefore, "[m]ost courts agree that the largest loss is the critical ingredient in determining the largest financial interest and

outweighs net shares purchased and net expenditures." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011)); *see also Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements." (quoting *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004))). Further, courts in this District "have a very strong preference for the LIFO method" or the last-in, first-out method, for calculating loss, because LIFO accounts for gains accrued to plaintiffs during the class period due to the inflation of the stock price.[4] *Richman*, 274 F.R.D. at 476; *see also eSpeed*, 232 F.R.D. at 100–01.

b. Application

Here, there are three parties contending for lead plaintiff status.[5] The chart below contains the relevant financial interest factors for each Movant.

| Movant | Shares Purchased during Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period ($) | Approximate Losses Suffered ($) |
|---|---|---|---|---|
| Ironworkers | 43,020.00 | 43,020.00 | 2,190,115.00 | 473,814.00 |
| Stamler | 228,209.00 | 12,000 | 504,000.00 | 187,188.91 |
| Pension & Retirement System | 6,778.00 | 6,778.00 | 328,043.00 | 57,198.96 |

(*See* Lieberman Decl. Ex. C; Portnoy Decl. Exs. B, C; Rosenfeld Decl. Ex. C.) Based on the Movants' motion papers, and as explicitly acknowledged by Movants, Ironworkers has the

---

[4] This is the method used not only for lead plaintiff, but also in determining the amount of compensation for stockholders who suffer losses due to securities fraud. *See eSpeed*, 232 F.R.D. at 101. It "takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price," whereas the other method, first-in, first-out or FIFO, "ignores sales occurring during the class period and hence may exaggerate losses." *Id.*

[5] I will not consider Powell's motion for the purpose of deciding Lead Plaintiff, as she withdrew her motion on July 21, 2017. (Doc. 22.)

8

largest financial interest in the case, suffering approximately $473,814 in financial losses. (*See* Ironworkers Mem. 6; *see also* Stamler Non-Opp. Notice; Pension & Retirement System Response Mem.)[6] Stamler suffered the second-largest financial losses, with $187,188.91 in losses, (Stamler Mem. 5), and Pension & Retirement System the third-largest, with approximately $57,200, (Pension & Retirement System Mem. 3).[7] Therefore, with respect to the factor accorded most weight—approximate losses suffered—Ironworkers has suffered substantially more losses than Stamler or Pension & Retirement System. Further, Ironworkers has both purchased the most net shares and expended the most net funds. Although Stamler did purchase more shares during the Class Period, he also sold a substantial portion of those shares before the end of the Class Period, and only purchased a net total of 12,000 Dick's shares—less than Ironworkers's net total of 43,020 shares. (*See* Lieberman Decl. Ex. C; Portnoy Decl. Ex. C.)

Because Ironworkers has the largest financial interest, as evidenced by its highest purchased net shares, expended net funds, and approximate losses suffered, and neither Stamler nor Pension & Retirement System have rebutted this presumption—in fact, they have both acknowledged that Ironworkers has the largest financial interest (*see* Stamler Non-Opp. Notice; Pension & Retirement System Response Mem.)—Ironworkers is the presumptive lead plaintiff.

---

[6] "Ironworkers Mem." refers to the Memorandum of Law in Support of Ironworkers Locals 40, 361 & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds's Motion to Serve as Lead Plaintiff and to Appoint Lead Counsel, filed July 17, 2017. (Doc. 20.) "Stamler Non-Opp. Notice" refers to Elliot Stamler's Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed July 31, 2017. (Doc. 24.) "Pension & Retirement System Response Mem." refers to Oklahoma Police Pension & Retirement System's Response to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed July 31, 2017. (Doc. 23.)

[7] "Stamler Mem." refers to the Memorandum of Law in Support of Elliot Stamler's Motion to Serve as Lead Plaintiff and to Appoint Lead Counsel, filed July 17, 2017. (Doc. 14.) "Pension & Retirement System Mem." refers to the Memorandum of Law in Support of Oklahoma Police Pension & Retirement System's Motion to Serve as Lead Plaintiff and to Appoint Lead Counsel, filed July 17, 2017. (Doc. 17.)

### 3. Rule 23

#### a. Applicable Law

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *eSpeed*, 232 F.R.D. at 102. The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements. *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *eSpeed*, 232 F.R.D. at 102; *Oxford Health Plans*, 182 F.R.D. at 49 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50. While the claim need not be identical, it must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "adequately

protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). The presumptive lead plaintiff meets this requirement when this plaintiff: (1) has no conflict of interest with the other members of the class, (2) has sufficient interest in the outcome of the case, and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *Reitan*, 68 F. Supp. 3d at 400.

b. Application

Ironworkers meets both the typicality and adequacy requirements of Rule 23. As it states in its memorandum, "Ironworkers allege, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Dick's, or omitted to state material facts necessary to make the statements they did make not misleading." (Ironworkers Mem. 7.) Ironworkers purchased Dick's securities during the Class Period and was harmed by Defendants' misrepresentations or omissions. (*Id.*) I am satisfied that Ironworkers's claims and legal arguments are similar to those of other investors who suffered, and are thus representative of the putative class. Accordingly, I find that Ironworkers has made a showing sufficient for typicality at this stage of the proceedings.

Ironworkers has also demonstrated that it meets the adequacy requirement at this stage of the litigation. Ironworkers has retained well-qualified and experienced counsel, its degree of losses suggests it will have a strong interest in advocating on behalf of the putative class members, and none of the Movants have suggested that its claims would be subject to unique defenses. Additionally, Stamler states in his Non-Opposition Notice that Ironworkers appears to preliminarily satisfy the typicality and adequacy requirements, (Stamler Non-Opp. Notice 1), and Pension & Retirement System does not rebut Ironworkers's status as presumptive lead plaintiff

11

or suggest that it would be subject to unique claims, (*see generally* Pension & Retirement System Response Mem.).

Because I find that Ironworkers satisfies the typicality and adequacy requirements and Movants have not rebutted this status, Ironworkers is appointed Lead Plaintiff in the instant action.

### B. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro*, 93 F. Supp. 3d at 278 (internal quotation marks omitted).

Here, Ironworkers has selected Pomerantz as class counsel, and moves for approval of its selection. (*See* Ironworkers Mem. 11–13.) Having reviewed Ironworkers's Memorandum of Law, (Doc. 20), as well as Liberman's Declaration and the firm resume attached as Exhibit D to the Declaration, (Doc. 21), I find that Pomerantz is well qualified to serve as lead counsel in the instant case. The attorneys at Pomerantz have had substantial experience with securities litigations as well as securities fraud class actions. (*See* Ironworkers Mem. 11; Lieberman Decl. Ex. D, at 1–4.) Therefore, I approve Ironworkers's selection and appoint Pomerantz as Lead Counsel.

### III. <u>Conclusion</u>

Because I find that Ironworkers has the greatest financial interest of the Movants, and that it satisfies the typicality and adequacy requirements of Rule 23, Ironworkers's motion for appointment as Lead Plaintiff and for approval of its selection of Lead Counsel is GRANTED, and the remaining motions are DENIED. The Clerk of Court is respectfully requested to

terminate the pending motions. (Docs. 10, 13, 16, 19.)

Plaintiff is directed, in accordance with the June 13 Order, (Doc. 9), to file an amended complaint or notify Defendants that no amended complaint will be filed no later than sixty (60) days after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the operative complaint no later than sixty (60) days after Plaintiff serves an amended complaint or notifies Defendants that no amended complaint will be filed.

SO ORDERED.

Dated: February 27, 2018
      New York, New York

Vernon S. Broderick
United States District Judge